David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*RON BOLAND and LINDA BOLAND*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RON BOLAND and LINDA BOLAND,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>MERRICK BANK,<br><br>　　　　　　Defendant. | Civil Action No.: _____<br><br><br>**COMPLAINT** |

For this Complaint, the Plaintiffs, RON BOLAND and LINDA BOLAND, by undersigned counsel, states as follows:

## **JURISDICTION**

1. This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiffs' cellular phones without consent, thereby violating the TCPA.

2. This action is also brought under Nevada Revised Statutes Chapter 598.0918 ("NRS 598") and Nevada Revised Statutes Chapter 41.600 *et seq.* ("NRS 41.600") for Defendant's deceptive trade practices as further described herein.

3. Plaintiffs allege as follows upon personal knowledge as to Plaintiffs and Plaintiffs' own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

4. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA claims. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

6. The Plaintiff, RON BOLAND ("Plaintiff" or "Mr. Boland"), is an adult individual residing in Las Vegas, Nevada.

7. The Plaintiff, LINDA BOLAND ("Plaintiff" or "Mrs. Boland"), is an adult individual residing in Las Vegas, Nevada.

8. Plaintiff were each, and at all times mentioned herein were, a "person" as defined by 47 U.S.C. § 153(39).

9.      Plaintiffs at all times relevant herein, were each over the age of sixty (60) and were each an "Older person" as that term is meant pursuant to Nevada Revised Statutes (NRS) 41.1395(4)(d).

10.     Defendant MERRICK BANK ("MERRICK"), is doing business in the State of Nevada.

11.     Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

12.     MERRICK at all times acted by and through one or more of its agents or representatives.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

13.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14.     The TCPA regulates, among other things, the use of automated telephone dialing systems.

15.     47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

    (A)   to store or produce telephone numbers to be called, using a random or sequential number generator; and

    (B)   to dial such numbers.

16.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior

express consent by the person being called, unless the call is for emergency purposes.

17.     According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls. The FCC also recognized that wireless customers are charged for incoming calls.[1]

18.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.[2]

19.     On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent". *Id*. at ¶ 30.

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

20. Further, consumers (like the Plaintiff) may revoke consent through any reasonable means. *Id*. at ¶ 47.

21. Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent. *Id*. at ¶ 58.

22. Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id*. at ¶ 61.

23. Consumers have a right to revoke consent, using any reasonable method including orally or in writing. *Id*. at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

24. In November 2015, Mrs. Boland was diagnosed with breast cancer. As a result of her medical condition Mr. and Mrs. Boland's household expenses increased resulting from significant medical costs, while their gross income decreased causing them to default on their financial obligations.

25. MERRICK was one of the Plaintiffs' creditors and Mr. and Mrs. Boland routinely paid their obligation to MERRICK in a timely manner until Mrs. Boland's health deteriorated.

26. However, once the MERRICK account went into default, MERRICK commenced calling the Plaintiffs cell phones to collect its debt.

27. Upon receiving MERRICK's calls, the Plaintiffs' advised MERRICK that Mrs. Boland was undergoing health issues and they would contact MERRICK to make payment arrangements when Mrs. Boland surgery was complete.

28. On or about August 10, 2016, upon receiving MERRICK's collection calls the Plaintiffs instructed MERRICK to cease all calls to their cell phones.

29. Mr. Boland explained to MERRICK's representatives that he was acting as his wife's full time caregiver, while they worked through her health issues and requested that MERRICK cease all its collection calls, so they could focus on Mrs. Boland's recovery.

30. However, MERRICK disregarded the Plaintiffs' requests and on a daily basis from August 2016 through November 2016 the Plaintiffs received numerous daily calls from the Defendant from the following phone numbers: (800) 599-2346 and (866) 874-0110.

31. Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

32. Defendant or its agent/s contacted Plaintiffs on Plaintiff's cellular telephone numbers ending in "4389" and "7379" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).

33. In the calls that Plaintiffs did answer, there would be a short pause lasting about two to three seconds between the time the calls were answered and the time that a live agent introduced themselves as a representative from Defendant.

34. Upon information and belief, based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used a predictive dialing system to place calls to Plaintiff.

35. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

36. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

37. Upon information and belief, the predictive dialing system employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

38. As discussed above, in or about August 10, 2016, the Plaintiffs instructed Defendant or its agent(s) not to call the Plaintiffs' cell phones ever again

thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

39. However, Defendant placed calls to each Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA thereafter.

40. Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

41. The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

42. Defendant's calls to Plaintiffs' cellular telephones were not for "emergency purposes."

43. Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

44. The Plaintiffs suffered actual harm and loss, since each of the unwanted calls depleted the Plaintiffs' cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm. While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from the Defendant's unwanted phone calls to the Plaintiff's cell phone.

45. Plaintiffs also suffered from an invasion of a legally protected interest

by placing calls to the Plaintiff's personal phone line when the Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy. The TCPA protects consumers from this precise behavior. Given MERRICK was aware Mrs. Boland was enduring cancer treatments, this invasion was especially callous.

46. Plaintiff has a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

47. Plaintiff was also personally affected, since the Plaintiff felt that the Plaintiff's privacy had been invaded when the Defendant placed calls to the Plaintiff's phone line without any consent to do so.

48. The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy.

## COUNT I

### Negligent Violations of the Telephone Consumer Protection Act, (47 U.S.C. § 227, *et seq.*)

49. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

50. Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

51. Each of the aforementioned calls by Defendant constitutes a negligent

violation of the TCPA.

52.     As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

53.     Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT II

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, (47 U.S.C. § 227, *et seq.*)

54.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

55.     Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

56.     Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

57.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

58.     Additionally, Plaintiff is entitled to seek injunctive relief prohibiting

such conduct by Defendant in the future.

## COUNT III

**Defendant's Violations of Nevada's
Deceptive Trade Practices Act
(NRS 598.0918)**

59.   Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

60.   "Solicitation" means "the act of . . . seeking to obtain" something – in this case money.  *Solicitation*, Black's Law Dictionary (2d Pocket Ed. 2001).

61.   Here, the Defendant solicited the Plaintiff to seek or obtain money from the Plaintiff.

62.   On March 13, 2001, Assembly Bill 337 (AB 337) was introduced to the Nevada State Legislature.  AB 337 revised Nevada's Deceptive Trade Practices statutes codified at NRS 598 et seq.

63.   As expressed by Marilyn Skibinski, Regulatory Analyst, Bureau of Consumer Protection, AB 337 was enacted to "provide[] additional protection for consumers."  *See Minutes of the Meeting of the Assembly Committee on Commerce and Labor*, 71st Session, April 4, 2001, page 1082, which can be viewed at http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2001/AB337,2001.pdf (the "AB 337 Minutes").

64.   Further, AB 337 was specifically intended to apply to companies (like

the Defendant) using "automatic calling" or automated dialing systems. As Ms. Rushton stated in response to Senator Maggie Carlton, "[that] is exactly what [AB 337 is intended to do." *Id*. at page 4093.

65. In specific, AB 337 made it a deceptive trade practice to, during a solicitation by telephone, to repeatedly or continuously conduct the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive or harassing;

66. Defendant repeatedly and continuously placed telephone calls to the Plaintiffs' residential phones (which are also the Plaintiffs' cellular phones) to solicit money from the Plaintiffs in a manner that would be considered annoying, abusive or harassing by a reasonable person.

67. Specifically, Defendant placed calls to Plaintiffs even after the Plaintiffs demanded Defendant cease calls to the Plaintiff, advised MERRICK of Mrs. Boland's health issues, and instructed MERRICK to cease all solicitations until Mrs. Boland recovered at which time they would contact MERRICK. However, MERRICK callously and willfully disregarded the Plaintiffs' demands for solace and continued soliciting Plaintiffs numerous times per day on a daily basis. Such conduct is unquestionably harassing and annoying.

68. As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger,

anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and illegal phone calls.

69. MERRICK's continuous intrusions may also have contributed to Mrs. Boland's slower than desired recovery and loss of critical rest time for both the Plaintiffs given Mrs. Boland's fragile health condition.

70. Plaintiffs have also lost the use of personal and family time while enduring these frustrations, as well as lost time and minutes from cell phone use, for which the Plaintiff is charged a fee.

71. Defendant therefore violated NRS 598.0918.

72. Defendant's violations of NRS 598.0918 constitute violations of NRS 41.600 and the Plaintiff is entitled to relief under NRS 41.600.

## COUNT IV

### Elder Abuse
### (Violations of NRS 41.1395)

73. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

74. The Plaintiffs are each an "older or vulnerable" person as defined by NRS 41.1395.

75. MERRICK caused the Plaintiffs to suffer injuries as a result of its illegal conduct; specifically emotional and economic distress as described above.

76.     Defendant's actions were willful and unjustified and resulted in causing injuries and mental anguish to the Plaintiffs.

77.     Specifically, as a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, the Plaintiffs suffered and continue to suffer from anger, anxiety, emotional distress, frustration, rage and has otherwise been totally annoyed by Defendant's intrusive and illegal phone calls.

78.     As a direct and proximate result of Defendant's wrongful conduct, the Plaintiffs have therefore suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray that judgment be entered against the Defendant awarding the Plaintiffs:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
3. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
4. Actual damages including, but not limited to, the emotional distress the Plaintiffs have suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent violations of NRS 598.0918 as

  permitted under NRS 41.600;

5. An award of attorney's fees and costs to counsel for Plaintiffs;

6. Two (2) times any actual damages pursuant to NRS 41.1395; and

7. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 26, 2016

        Respectfully submitted,

       By  /s/ David H. Krieger, Esq.
        _____

        David H. Krieger, Esq.
        Nevada Bar No. 9086
        HAINES & KRIEGER, LLC
        8985 S. Eastern Avenue, Suite 350
        Henderson, Nevada 89123
        Phone: (702) 880-5554
        FAX: (702) 385-5518
        Email: dkrieger@hainesandkrieger.com

        Attorney for Plaintiff
        *RON BOLAND and LINDA BOLAND*